### 6777

### STATE v. GALLMAN.

1. SPECIAL TERMS OF COURT.—That the Governor in ordering a special term of the Court of General Sessions, under Secs. 1744 and 2745 of Code of 1902, used the words "to dispose of all the cases on the criminal docket in said county," does not invalidate the order or affect the power of the Judge to try a cause then on the docket.
2. EVIDENCE—DYING DECLARATIONS.—Before admission of dying declaration trial judge ascertained that deceased was conscious of impending death, and it is not error for him *at that time* to refuse to permit defendant to offer evidence tending to show deceased after making the declaration had not lost hope of recovery.
3. IBID.—THREATS—MURDER.—Accusations of crime not connected with threats against accused are not admissible in defense for killing accuser, on ground that other like accusations were accompanied with threats.
4. CHARGE.—Statement by Court in ruling out accusations of deceased, that defendant burned his barn, that the burning of the barn had nothing to do with the killing, is not a charge on the facts.
5. IBID.—Remarks by judge while considering competency as evidence of parts of a pistol and trying them together to see if they fit, are not objectionable.

6. WITNESS.—CROSS-EXAMINATION is sometimes properly relaxed in examining a witness whose testimony is doubtful.

7. IBID.—OPINION.—ON CROSS-EXAMINATION it is not error to ask a witness if the time elapsing between shots of a pistol was not correctly illustrated by another witness by clapping the hands.

8. EVIDENCE.—The size of the family of a defendant on trial for murder is not pertinent.

9. IBID.—REPLY.—Admission of pants of deceased in reply to contradict evidence of defense that deceased had his hand in his right-hand hip-pocket, is proper, and the fact that the pants had been washed does not affect it.

10. EVIDENCE IN REPLY that deceased owned only the pistol in evidence is competent to contradict evidence by defense that he had a bright-looking pistol.

11. CHARGE.—The portions of the charge here excepted to, "and in this case it would be an indication to do a wrongful act," and that if defendant slew deceased because he circulated a slanderous report about him, taken in connection with the whole definition of malice, is not a charge on the facts.

12. MANSLAUGHTER—MURDER.—A killing in sudden heat and passion because of slight physical aggression against one's person, or member of his family, or property in his presence, is manslaughter, but a kiling under such circumstances because of previous malice is murder.

13. VERDICT.—Sending a jury back into the room after having been out all night and after statement by foreman that the difference was on the facts and had lasted since a few minutes after charged with the case, and urging upon them the importance of honestly discussing their differences and reaching a verdict, is not coercion.

Before PRINCE, J., Union, Special term, July, 1907. Affirmed.

Indictment against James W. Gallman for murder of S. M. Gilmore. From sentence on verdict of manslaughter, defendant appeals.

*Messrs. Townsend & Townsend, J. Ashby Sawyer, Victor E. DePass and John Gary Evans,* for appellant, cite: *Governor's authority to call a special term of court is ministerial and he can only do what the Statute authorizes:* 19 Ency.,

456; 28 S. C., 526; 2 Strob. Eq., 174; 30 S. C., 368. *Principles essential to admission of dying declarations:* 35 S. C., 295; 58 S. C., 41; 9 S. C., 212; 14 S. C., 413. *Previous relations between the parties are competent to show the state of mind at time of difficulty:* 33 S. C., 113; 66 S. C., 420; 68 S. C., 425; 17 L. R. A., 650; 43 S. C., 52; 21 Cyc., 912, 893- 4-5, 967-8. *Question seeking opinion of one witness as to the truth of testimony of another is incompetent:* 69 S. C., 460, 413; 56 S. C., 371. *Evidence in reply:* 58 S. C., 41.

*Solicitor T. S. Sease* and *Messrs. George Johnstone* and *James Munro,* contra.

February 27, 1908.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   James W. Gallman was tried at a special term of the Court of General Sessions for Union County for the murder of one Gilmore.

On the 5th day of August, 1907, the jury found him guilty of manslaughter, and the presiding judge sentenced him to imprisonment for fifteen years in the State penitentiary.   From this sentence the defendant has appealed, upon eighteen exceptions.   The first and second will be considered together, and they are as follows:

1. "Because his Honor erred in overruling the motion of the defendant to the effect that the Court was without authority to try this case under the order of his Excellency, Governor Ansell, in that said order does not conform to the statute authorizing the Governor to order a special term of the Court of General Sessions; it being respectfully submitted that the Governor has no power or authority to order a special term of the Court of General Sessions, except in the manner and with the authority as prescribed by Sections 2744 *et seq.,* Code of Laws, Volume I, and that as his Excellency's order does not conform to the requirements of the said statute, the order was a nullity, and conferred no power upon the Court to try this case.

2. "Because his Honor erred, after holding 'that the Governor can not limit the Court' and that 'part of his order is a nullity,' in not, therefore, holding that the whole is a nullity; it being respectfully submitted, that if that part of it which limits the Court to cases on the docket is null, the whole order is a nullity, and it does not conform to the law conferring the authority upon the Governor to order a special term of Court."

The exceptions raise the question in relation to the power of his Excellency the Governor to call a special term of the Sessions Court under Sections 2744 and 2745 of the Code of Law of South Carolina, which are as follows:

Sec. 2744. "Upon the application to the Governor by the Solicitor of any Circuit, stating that the public interest demands an extra term of the Court of General Sessions in any county of the State, or upon the application of the majority of the members of the bar of any county, stating that the civil business demands an extra session of the Court of Common Pleas, it shall be the duty of the Governor to appoint some man, learned in the law, and to be suggested by the Chief Justice of the Supreme Court of the State, to hold an extra term of said court or courts in said county, and notify the clerk of said court of said appointment.

Sec. 2745. "When notified of such appointment, the clerk of the said court shall notify the proper authorities, and the grand jury shall be summoned to attend, if it be a Court of Sessions, and a petit jury shall be drawn and summoned, if jury cases are to be tried, in the regular manner, for the purpose of said court, and as the same may be necessary, and the clerk shall notify said special judge of the time fixed for holding said special term of court."

The Governor having added in his order to the words in said section, "to dispose of all cases on the criminal docket in said county," it is claimed by the appellant that the addition of these words by the Governor rendered the order nugatory and of no effect.

The Constitution of the State provides that there must be at least two terms of the Court of General Sessions in each county every year, at such times and places as the General Assembly may direct. Art. V., Sec. 18, of the Constitution of 1895. Thus it will be seen that there is no limitation in the Constitution upon the power of the General Assembly to make provisions for the holding of the Court of General Sessions in each county except there shall not be less than two regular terms.

The General Assembly of this State in its wisdom has provided, as fixed in Sections 2744 and 2745, for a special Court of General Sessions in any county of this State when request is made therefor by the Solicitor of the Governor. Upon such request of the Solicitor, the Governor may order a special or extra term of the Court of General Sessions for any county, and under this power vested in the Governor the special session ordered in July, 1907, was held. By Sections 2744 and 2745 it is provided how such special court for Union should be held, and it seems that the provisions of these two sections were complied with by all the officers of the State.

The appellant admits that, but claims that the Governor interferes with Section 2744 by providing that such Court of General Sessions, so to be holden, should be "to dispose of all the cases on the criminal docket in the said county." Technically, the Court of General Sessions is confined to the hearing of criminal cases in a county. So therefore the use by the Governor of such language, when he confined the court to a disposition of all the criminal cases on the criminal docket, was, to say the least, mere surplusage.

The Circuit Judge, when his attention was called to the Governor's order, stated "that in my judgment the Governor could not so limit the Court, and that part of his order is therefore a nullity." Thus it will be seen that it was not claimed that there was any restriction in the Governor's order which affected the prisoner, who is here as appellant. The question, therefore, is purely academic, for the Governor

bases his right in ordering such term of court on Section 2744 of the Code of Laws of this State.

There could possibly be no mistake made by any one as to where the authority for this Court emanated; no possible harm could result from this language used by the Governor, when he said "dispose of all the cases on the criminal docket" in the said county. These two grounds of exception are, therefore, overruled.

*Exceptions* 3, 6 and 9 were abandoned by the appellant.

*Exception* 4. "Because his Honor erred in admitting in evidence over defendant's objection, the alleged dying declaration of the deceased; it being respectfully submitted that the proper foundation for an admission of such has not been proven, in that it was not sufficiently shown that the defendant was fully conscious of his impending death."

It seems to us that the Circuit Judge did not make the mistake here attempted to be pointed out. He was careful in his ruling on this point to recognize as controlling him, the cases of the *State* v. *Banister*, 35 S. C., 295, 14 S. E., 678; *State* v. *Jaggars*, 58 S. C., 41, 36 S. E., 434; *State* v. *Bradley*, 34 S. C., 139, 13 S. E., 315. It is evident from a careful study of the record in this case that the Circuit Judge satisfied himself that the deceased, Gilmore, was conscious of the imminence of death at the time that his declaration was made and that he was without hope of recovery and the circumstances of the death was the subject of the declaration. It seems to us that the Circuit Judge made no mistake here and this exception is therefore overruled.

*Exception* 5. "Because his Honor erred in admitting the alleged dying declaration of the deceased, and in refusing the application of the defendant's attorney to first offer testimony to the effect that deceased had been speaking to others, not in the presence of Dr. Southard, and probably indicated he had not lost hope; and in his remarks in refusing such application, and especially in the remark that 'I know you had much rather,' etc."

It seems to us that the Circuit Judge made no mistake in admitting the dying declaration; as we just held, it was his duty to satisfy himself that the deceased made his statement with a full appreciation of his approaching death and that the testimony referred to by the appellant could not really detract from the recognition by the Circuit Judge of the deceased fully realizing his approaching death, when he made the statement which the Circuit Judge admitted in the testimony. We therefore overrule the objection.

*Exceptions* 7 and 8 will be considered together and are as follows:

7. "Because his Honor erred in excluding all testimony relating to accusations by Gilmore against Gallman of burning his barn, unless the testimony showed that the accusations were accompanied by threats by Gilmore against Gallman; the error being, and it is respectfully submitted that since all the threats which Gilmore made against Gallman were made in connection with these same accusations, or similar ones, of burning his barn, the fact that Gilmore made accusations, not coupled with a threat, showed plainly the state of his mind toward Gallman.

8. "Because his Honor erred in frequently announcing, in connection with his rulings, that the burning had nothing to do with the case and that accusations of burning afforded no excuse for killing a man; the error being, that such announcements were not necessary in order to make said rulings intelligible; and this fact, coupled with the frequency of such announcements by his Honor, were plain indications to the jury of his Honor's opinion, and in violation of Article V, Section 26, of the State Constitution."

The duty of Circuit Judge to keep within the proper limits the testimony relating to the conduct of the two parties, the assailant and the deceased, was a very trying one, and our examination of the record shows how very careful were the rulings of the Circuit Judge in regard thereto.

It is highly important when human life has been taken to hold the accused within stern limits where he seeks to

justify the killing of his fellow-man on account of words of the deceased. It seems that both parties to the homicide used harsh words toward each other; the lips of Gilmore are forever closed; Gallman was responsible for his death; the jury must be limited in their investigation and conclusion to the homicide and not be governed by the harsh words of each of the parties preceding the deadly conflict. An examination, as we before remarked, fails to disclose to us any mistake by the judge in his rulings in this regard. We therefore overrule these two exceptions.

*Exception* 10. "Because his Honor erred in admitting in evidence, over objection, the pieces of a pistol handle which the witness, Scott, testified he 'got off the desk in his office;' his Honor erred in holding 'that on finding this in the same room there just after the fight, if they fit, that he can show, if they fit those other pieces—he can show that independently;' and with experimenting with them to see for himself (the judge) whether 'there is any reasonable connection between those two pieces before I admit them in evidence;' and in reply to defendant's objection to such procedure saying, 'the jury can shut their eyes.' "

We do not think the objection here referred to has any weight, for the Circuit Judge refused to admit them. Certainly, it was proof that the accused, the appellant here, had his pistol in his hand which passed into the custody of his son immediately after the difficulty. Referring to bringing out the pistol from another room the judge remarked, "I do not think so, even if he came out of the back room with the thing in his hands; that would not connect them with the fight." We overrule this exception.

*Exception* 11. "Because his Honor erred in allowing plaintiff's counsel, over objection, to require the defendant's witness, Joe Gallman, on cross-examination, to answer the question that he (the deceased) looked like a fool, in talking to the witness as the witness testified he had."

In this matter of the cross-examination of Joe Gallman, one of defendant's witnesses, we do not regard that there is any validity in the objection. The Circuit Judge is obliged to relax the rules somewhat in the cross-examination of a witness whose testimony is a subject of controversy. No harm has been pointed out as having come from this cross-examination. We therefore overrule the same.

*Exception* 12. "Because his Honor erred in allowing the witness, Paul Coleman, on cross-examination by the State's attorney, to answer the following questions: 'Q. If Mr. John Henry Fowler gives us this description of it, is it pretty accurate? (Indicating by slapping the hands five times.) Q. If he gives us this description of it, is it pretty accurate? (Indicating with hands slapping.)'—over defendant's objection; it being respectfully submitted that the effect was to require the witness to give his opinion, or his version of the truthfulness of the testimony of the witness John Henry Fowler."

This being a cross-examination of one of defendant's witnesses, relating as it does to a description of the time between the shots of a pistol, indicated by the slapping of his hands, no harm could result to the defendant from such a mode of examination. We therefore overrule the same.

*Exception* 13. "Because his Honor erred in not allowing the defendant, when on the stand as a witness, to answer the questions as to the size of his family, and as to the fact that the defendant had children."

We see no possible relevancy of the question excluded. The defendant was not being tried for having a family, or not having a family, or not having children. Care must be exercised to avoid improper sympathy. This is all the judge tried to do by his ruling. His conduct was proper, and the exception is overruled.

*Exception* 14. "Because his Honor erred in allowing the witness for the State, Miss Ethel Gilmore, to testify, in reply and over the defendant's objection, as to the trousers the deceased had on on the occasion of the difficulty; it being

respectfully submitted that the same was not in reply to anything brought out in defendant's testimony, and especially with reference to the buttonhole in the same, and especially as the trousers had been washed since the difficulty."

Miss Ethel Gilmore had testified as to the trousers worn by her father on the day of the homicide but before the altercation took place. The State offered the trousers in evidence in contradiction of a witness of defendant who said deceased had his hand in his right hip-pocket. That the trousers had been washed after the homicide does not alter the fact, if such was the fact. We see no objection to this identification of the trousers. This exception is overruled.

*Exception* 15. "Because his Honor erred in permitting the witness, Miss Ethel Gilmore, to testify that the deceased hod but one pistol, and to identify the same, and allowed the same to go in evidence; it being respectfully submitted that this was not in reply to anything brought out in the defendant's testimony."

The witness, Miss Ethel Gilmore, was the daughter of the deceased, and was allowed to testify as to his being the owner of a pistol and as to how many pistols he owned, to contradict the statement by defendant's witness that deceased had a bright-looking pistol. The only question was the accuracy of her knowledge; her testimony had to be governed by the rule of the credibility applied to other witnesses. We see no objection. This exception is overruled.

*Exception* 16. "Because his Honor erred in charging the jury, under the subject of murder and in defining malice, as follows: 'It is a wicked condition of the heart; it is a wicked purpose; it is a performed purpose to do a wrongful act without sufficient legal provocation; and in this case it would be an indication to do a wrongful act which resulted in the death of this man without sufficient legal provocation or just excuse or legal excuse. Now, the question is, was there malice in this killing? If you should find it would not be self-defense, then you inquire

next whether it would be murder or manslaughter, and in considering that question you first take up murder and consider whether or not the killing was done with malice aforethought, was it the result of a performed purpose, was it a determination to avenge a wrong? No man has a right to take life in his own hands, and if you find from the testimony in this case, that the defendant slew the deceased, and slew him because of some wrong that the deceased had done him, —previous wrong, some slanderous report deceased had put into circulation about him,—and that was a prime cause of the act, and he slew him for it, he is guilty of murder. If those are the facts, it would be your duty to have the manhood to say so.' The error being: 1st. That his Honor charged upon the facts in the case in stating 'and in this case it would be an indication to do a wrongful act which resulted in the death of this man, without sufficient legal provocation or just excuse, or legal excuse.' 2d. That his Honor charged upon the facts in charging, 'and if you find from the testimony in this case that the defendant slew the deceased, and slew him because of some wrong that the deceased had done,—previous wrong, some slanderous report that the deceased had put in circulation about him,—and that was a prime cause of the act, and he slew him for it, he is guilty of murder.' 3d. In instructing the jury that if the above was the prime cause of the killing that 'it would be your duty to have the manhood to say so;' thereby indicating to the jury that in this case it would take extraordinary courage and 'manhood' to write a proper verdict."

It seems to us that his Honor properly charged the law in regard to murder, and properly defined malice. He does not charge upon the facts, and in using the word "manhood" to the jury he was simply endeavoring to induce them to do their full duty. This exception is overruled.

*Exception* 17. "Because his Honor erred in his charge to the jury upon the subject of manslaughter, as follows: 'I make some physical aggression upon your person, such as to

indicate a contempt for your manhood, slap you in the face with the back of my hand to indicate my contempt for your courage, spit in your face as if you were a dog, tweak your nose, take you by the`ear and lead you across the street in the presence of the people, and you strike me dead,—the law says that is manslaughter. It takes a provocation something like that. Not necessarily confined to those things, but to some physical aggression upon the person of another or on the person of a member of his family, somebody for whom he is responsible, or on his property, in his presence. The law says that is manslaughter. If you had a valuable horse, or a horse, whether it was valuable or not, and I walk up to you in your presence and kill your horse without rhyme or reason, and you strike me dead, the law says that would be manslaughter if you did it because of passions aroused by that act. But suppose, Mr. Foreman, you had the malice towads me and only seized upon that opportunity for venting your malice, then you would be guilty of murder; but if you kill me because of the sudden heat and passion and in sudden passion upon a sufficient legal provocation, where there has been some physical aggression to you or your property, or to your person, or to the person of some member of your family, the law would not excuse you entirely where the physical aggression was not such as to put them in danger of serious bodily harm,—that is, of serious bodily harm or death. The law would not excuse you. Of course, if the physical aggression was of such a nature as made it necessary for you to kill me in order to protect yourself, then that would be self-defense. I am talking about where there is slight physical aggression that does not make it necessary to take life, and you strike me dead,—that is manslaughter, voluntary manslaughter; you intended to kill me, just like you would murder, but the difference is this: in one instance your act was in sudden heat and passion, and the law in its tender compassion for human nature deems that a man is beside himself at the time he does that act and will excuse him; but where there has

been deliberation, where the act is the consequence of a deliberate purpose, influenced by some form of grievance, that is murder, and you can make nothing else out of it.' The error being

1. "That his Honor instructed the jury in effect that it takes a provocation something like some physical aggression upon the person, or upon some member of his family, or his property in his presence, to reduce a killing from murder to manslaughter.

2. "In charging, 'But suppose, Mr. Foreman, that you had malice towards me and only seized upon that opportunity for venting your malice, then you would be guilty of murder,' unless done in sudden heat and passion upon a sufficient legal provocation, 'where there has been some physical aggression to you, or to your property, or to your person, or to the person of some member of your family.' "

All the judge did in regard to this charge of manslaughter was to impress upon the jury the difference between manslaughter and murder; he ought to have done this, and in doing so he has not violated the law. This exception is overruled.

*Exception* 18. "Because his Honor erred, after recalling the jury the next morning, and the foreman stating, in response to the Court, whether the trouble was one of law or of fact, 'I think it is one of fact; the way the jury sees the matter they disagree upon it;' 'no disagreement, Judge, about the law, it is the way we view the facts;' 'Mr. Judge, I might state here that this condition or difference has been continuous from about forty to fifty minutes after we went in the room. It is an honest conviction, a plain matter of difference, but we have no objection to try again.' His Honor erred in instructing the jury as follows: 'And it is of the utmost importance that there be a decision. Sometimes we get up a difference in the jury-room growing out of a hot discussion, and get up a little irritation. I would like for each juror to look into his own heart, stand in the presence of his own personality,

and decide for himself whether or not his refusal to agree
with his brothers is the result of an honest conviction rather
than irritation, or sometimes pure cursedness, just a spirit
of opposition.    I do not mean to intimate that any juror
there is that way, but we all get that way; we are all human
and get irritated.    We can not afford to allow a little per-
sonal irritation to prevent the taking of a candid view of
the testimony in the case.    A mistrial, as I had occasion to
say the other day, is a judicial abortion, and I am sure you
don't care any more for that than I do.    It is an injustice
to the State and an injustice to the defendant.    Every juror
should feel,—I want you to realize fully that every juror
should feel that he is in the jury-room hunting the truth,
nothing but the truth.    I don't want to be unreasonable
about this thing, but I do want you to try a little more, Mr.
Foreman.    I have no disposition to punish the jury—you
understand that—I sympathize with them and am sorry for
them.    Try it, I do not say for how long.    I am not going
to be unreasonable.    I have no disposition to undertake to
coerce a verdict.    I would not have one if I had to coerce it
from the jury even if I could.    I have too much sense to
undertake to coerce a verdict in South Carolina.    Go back
and make an honest effort and see what you can do.    Let
every man look into his own heart and judgment and stand
in the presence of his own personality and say whether or
not his view is an honest conviction from the testimony.
If it is, stand by it.    If it is not, let your brother discuss it,
and wherever your honest judgment leads, there go.'

"The error being: 1. That his Honor erred in requiring
the jury to return to their room after having been out since
the previous afternoon, and stating that it was an honest
difference upon the facts of the case, it being respectfully
submitted that such action, especially in view of the remarks
of his Honor in sending them back, virtually amounted to
coercion.

2. "That his Honor, in referring to the 'very great
expense' in the case, and that sometimes it is 'pure cursed-

ness,' 'just a spirit of opposition,' and 'a mistrial, as I had occasion to say the other day, is a judicial abortion, and I am sure you don't care any more for that than I do;' in requiring the jury to return to their room to further consider the case, stating that 'I don't say how long,' amounted to coercion; and the verdict rendered under such circumstances is not the expression of the honest conviction of the twelve men on the jury, and should not be allowed to stand."

The judge was anxious that the jury should decide the case, according to the law and the testimony, as should be done. Every effort was made by him to avoid any appearance of controlling the verdict of the jury, as he ought to have done, and not having violated the law in any respect in his recommendations to the jury, we see no ground for upholding this exception.

We therefore affirm the judgment of the Circuit Court.

MESSRS. JUSTICES GARY, JONES and WOODS concur in the result.