16347
## STATE v. PULLEY
(59 S. E. (2d) 155)

*Mr. Hobart F. Atkins,* of Knoxville, Tenn., and *Mr. W. T. Bolt,* of Laurens, *for Appellant,*

*Mr. Hugh Beasley, Solicitor,* of Greenwood, *for Respondent,*

April 24, 1950.

E. H. HENDERSON, Acting Associate Justice.

The appellant, Grover Tojo Pulley, was indicted for a violation of section 1165 of the Code, which makes it un-

lawful for any one to have in possession certain named articles, or other implements or things adapted or commonly used for the commission of burglary, larceny, safe cracking, or other crime, under circumstances evincing an intent to use them in the commission of a crime. He was tried at the June, 1949, term of the Court of General Sessions for Laurens County. He was found guilty by the jury, and was sentenced to ten years imprisonment.

The evidence shows that he had in his possession, among other things, dynamite fuses and caps, a large and a small crowbar, an auger and bit, a small keyhole flashlight, tweezers, a cord described as a "strangle cord", a rubber syringe, a quantity of cotton, a large flashlight, an all metal screw driver, two metal punches, a pair of cotton gloves, adhesive tape, and a number of keys of various kinds.

Some of these articles are specifically named in the criminal statute. The testimony of the law enforcement officers was that all of them were adapted to use in various activities connected with housebreaking and safe cracking. They need not have been originally designed for a burglarious purpose, if they are suitable for breaking and entering. 12 C. J. S., Burglary, § 69, page 753; 9 Am. Jur. 282.

There was a reasonable conclusion to be drawn from the evidence that the appellant had an intent to use these articles in the commission of crime. It is true that many of these things could be put to a lawful use, but it is not reasonable to suppose that a person, without criminal intent, would be driving about with such an assorted and rather complete collection of things, all of which are commonly used by a burglar or safe blower. The defendant had his automobile equipped with two carburetors, and especially adjusted for quick starting and great speed. He picked up a man named Earl Jackson near Spartanburg and tried to persuade him to help him "on a job." He told him that his name was James C. Perkins. He spoke to him of certain old persons in

Tennessee whom he intended to rob. He drove Jackson to Clinton and sent him into a hardware store to buy some dynamite and a fuse. Instead, Jackson called the police. The appellant fled from the officers in his high-powered automobile, driving almost one hundred miles an hour for several miles in an effort to elude them. No doubt he would have escaped but for having to slow down upon meeting other cars near a bridge. This enabled the officers to overtake him. He was found to have in his automobile, in addition to the articles which have been mentioned, a handcuff key, a pair of metal knucks, a Belgian automatic pistol with magazine holding fifteen cartridges, and a sawed-off shotgun loaded with buckshot. He also had quite a number of large-scale maps of many counties in North Carolina, extra 1948 license tags of Georgia and Tennessee, and a first aid kit for the treatment of gunshot wounds.

The defendant offered no testimony at all.

In view of the evidence, we think that the trial Judge properly refused to direct a verdict of not guilty, and that he wisely exercised his discretion in overruling the motion for a new trial.

The appellant next contends that there was error on the part of the Circuit Judge in failing to tell the jury the maximum sentence which could be imposed. Judge Griffith did inform the jury that the sentence was within the discretion of the court. In charging the law as to this offense we do not think that it was necessary for the Judge to tell the jury what the limits of punishment were. No request was made by the defendant for a more detailed charge. The function of the jury was to say whether the defendant was guilty or not guilty. The jurors were not concerned with the punishment fixed by the law, nor with the discretion of the Court in deciding upon the sentence.

Another exception alleges that the Circuit Judge erred in his charge made to the jury, after they reported that they were unable to agree, by telling them

that "a mistrial is always bad, it is a miscarriage of justice." If these words stood alone they would not be the most appropriate ones, but here they were only a part of what was said. They must be considered in their context. When the jury came in and reported that they could not agree upon a verdict, Judge Griffith instructed them as follows: "Well, gentlemen, I do not want to try to force you to reach a verdict, nothing would be further from my mind, but a mistrial is always bad, it is a miscarriage of justice if the State is entitled to a verdict of guilty it is entitled to that verdict today and if the defendant is entitled to a verdict of not guilty he is entitled to it today. I do not want any man to sacrifice any principle whatsoever, but neither should any man just set his opinion against that of all the other jurors and refuse to listen to the reasoning of the other jurors. The same evidence was heard by all twelve of you, yet I doubt if any two could recite it exactly the same, yet each would be telling it just as you heard it and in substance it would be the same, so I say you should, without compromising any principles, reason together and try to arrive at a verdict. I do not think any other twelve men in Laurens County would be more capable of arriving at a verdict than you gentlemen, and I am going to ask you to go back in the jury room and try once more to reach a verdict, if you can't reach a verdict within a reasonable time I will be left no alternative except to discharge you."

After reading the statute again at the request of one of the jurors, the Judge further stated: "All right, gentlemen, you may retire and see if you cannot reach a verdict. If you find that you cannot, are convinced that it is impossible to get together, knock on the door and we will bring you back in and discharge you, but I do ask that you make every possible effort to decide this case at this time. You may retire."

> It is the duty of a Circuit Judge to urge the jury to agree upon a verdict, provided he does not coerce them. The trial of this case took only about six hours,

including the rendition of the verdict and the sentence, so that it clearly appears that the jurors were not in their room for any great length of time.

Expressions quite similar to the one complained of were considered by the Court in the cases of *State v. Dawson,* 203 S. C. 167, 26 S. E. (2d) 506, and *State v. Gallman,* 79 S. C. 229, 60 S. E. 682, and it was held, that taking the charges as a whole, no coercion was shown.

In the present case we do not think that it can be said that Judge Griffith coerced the jury into finding the verdict.

The final point raised by the appellant is that the sentence of ten years was unduly severe. The statute in question provides for punishment in the discretion of the court. No minimum or maximum punishment is fixed. The discretion of the trial Judge is, of course, subject to the constitutional provision relating to cruel and unusual punishment. Constitution of 1895, Article 1, Section 19. The sentence here does not violate the constitution, and is not ·in conflict with the provisions of section 1038 of the Code, which embraces misdemeanors as well as other crimes. "Only rare and unusual circumstances will this Court interfere with the discretion of the trial judge in the imposition of a sentence." *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273, 277. No unusual circumstances exist in the present case.

In our opinion there was no abuse of the discretion which is confided in the Circuit Judge. The appellant was not a first offender, but the record shows that he had been convicted of murder in North Carolina, and had been given a sentence of from 28 to 30 years. He had been placed on parole, and this had been revoked at the time of the present incident. He had also been convicted of housebreaking and larceny. No doubt the trial Court took that into consideration in assessing the punishment.

All of the exceptions are overruled, and the judgment appealed from is

Affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.