17722

STATE, Respondent, v. Gentry PUCKETT, John W. Burgess and Don Wheeler, Appellants

(117 S. E. (2d) 369)

*Messrs. J. Nat Hamrick,* of Rutherfordton, N. C., and *J. Shepherd Thompson,* of Georgetown, *for Appellants,*

*R. Kirk McLeod, Esq.,* of Sumter, *for Respondent,*

December 7, 1960.

Moss, Justice.

At a Court of General Sessions held in Sumter, South Carolina, in May 1959, Gentry Puckett, John W. Burgess and Don Wheeler, the appellants herein, along with Jimmy Lane and Floyd E. Trantham, were indicted for (1) conspiracy to break and enter the Piggly Wiggly Store owned by one Red Baker, with intent to steal therefrom, in violation of Section 16-550, as appears in the cumulative supplement to the 1952 Code; (2) attempting to enter the store house aforesaid with intent to steal and carry away the goods of the owner thereof, in violation of Section 16-361 of the 1952 Code of Laws of South Carolina; and (3) for the possession of certain named tools or other implements or things adapted or commonly used for the commission of burglary, larceny, safe cracking, or other crime, under circumstances evincing an intent to use or employ, or allow the same to be used or employed in the commission of a crime, or knowing that the same were intended to be so used, in violation of Section 16-302 of the 1952 Code of Laws of South Carolina. At the close of the testimony of the State, a directed verdict was granted as to the appellant, Gentry Puckett, on Count 2 of the aforesaid indictment. All of the appellants, along with the defendant Jimmy Lane, interposed motions for a directed verdict of not guilty on all counts of the indictment at the close of the State's testimony, and again at the close of the testimony in behalf of the appellants and Jimmy Lane. All of these motions were refused, with the exception above stated. The case was submitted to the jury and a verdict of guilty was returned. A motion was then made on

behalf of the appellants for the direction of a verdict *non obstante veredicto*. This motion was refused and the appellants, along with Jimmy Lane, were duly sentenced. Timely notice of intention to appeal to this Court was given by the appellants hereinbefore named. The ten exceptions filed by the appellants raise only two questions. By the first nine exceptions, the appellants contend that the evidence is insufficient to support the verdict rendered by the jury, and that the trial Judge should have directed a verdict in their favor or granted judgment *non obstante veredicto*. The other question is whether the trial Judge committed error in the admission of certain evidence.

Section 16-550 of the 1959 cumulative supplement to the 1952 Code of Laws, defines a conspiracy as follows: "The crime known to the common law as conspiracy is hereby defined as a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object, or an object neither criminal nor unlawful by criminal or unlawful means." The foregoing statute defining conspiracy confirms a definition thereof as is contained in *State v. Ameker*, 73 S. C. 330, 53 S. E. 484; *State v. Davis*, 88 S. C. 229, 70 S. E. 811, 34 L. R. A., N. S., 295; and *State v. Hightower*, 221 S. C. 91, 69 S. E. (2d) 363, 369. In the last cited case, as to the proof of conspiracy, this Court said:

"The generally recognized rule is that the fact of a conspiracy may be proved by any relevant competent evidence, having a legitimate tendency to support the accusation. The conspiracy may be shown, of course, not only by direct evidence, but by circumstantial evidence, or by both. And in a case of this kind, in the reception of circumstantial evidence, great latitude must be allowed. *State v. Shipman*, 202 N. C. 518, 163 S. E. 657; 15 C. J. S., Conspiracy, § 92b, p. 1141. Here, we have not only circumstantial evidence, but direct evidence going to prove appellant's guilt.

"Conspiracies may and generally must be proved by a number of indefinite circumstances which vary according to

the objects to be accomplished. Any circumstance or act' standing alone might have little weight, but, taken collectively, they point unerringly to the existence of the conspiracy. *Bloomer v. State,* 48 Md. 521. And as stated by the Court in *State v. Anderson,* 208 N. C. 771, 182 S. E. 643, 652: 'When resorted to by adroit and crafty persons, the presence of a common design often becomes exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, the less plainly defined are the badges which usually denote their real purpose.' And see Annotation, Vol. 3 Am. St. Rep., Page 482."

The appellants John W. Burgess and Don Wheeler were convicted of a violation of Section 16-361 of the 1952 Code of Laws of South Carolina, which provides: "Any person who shall enter, without breaking, or attempt to enter any house * * * with intent to steal or commit any other crime * * * shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished in the discretion of the court."

The third count of the indictment charges the appellants with a violation of Section 16-302 of the 1952 Code of Laws, which provides that, "A person who * * * has in his possession in the day or nighttime any engine, machine, tool, false-key, pick-lock, bit, nippers, nitroglycerine, dynamite-cap, coil or fuse, steel wedge, drills, tap-pin or other implement or thing adapted, designed or commonly used for the commission of burglary, larceny, safe cracking or other crime, under circumstances evincing any intent to use or employ or allow the same to be used or employed in the commission of a crime or knowing that the same are intended to be so used shall, upon conviction, be guilty of a misdemeanor. In either case he shall, upon conviction, be punished at the discretion of the court." This statute was before this Court in the cases of *State v. Pulley,* 216 S. C. 552, 59 S. E. (2d) 155, and *State v. Nicholson,* 221 S. C. 472, 71 S. E. (2d) 306. In these cases this Court held that the fact that a particular tool may be, and frequently is, put to a lawful

use, is not conclusive that it may not have been, in a given case, intended to be used in the commission of crime, such as burglary, larceny and safe cracking. In *State v. Pulley, supra,* it was held that the possession of articles suitable for breaking and entering may constitute an offense under Section 16-302 of the Code, though they were not originally designed for a burglarious purpose. 12 C. J. S. Burglary § 69, page 753. The statute, Section 16-302, provides that if such tools are in the possession of one, under circumstances evincing an intent to use or employ or allow the same to be used or employed in the commission of a crime, then the possessor of such tools is guilty.

Where there is a motion for a directed verdict or judgment *non obstante veredicto* on the ground of the insufficiency of the evidence to require the submission of the case to the jury, we are bound by the rule as stated in the case of *State v. Nicholson et al.,* 221 S. C. 399, 70 S. E. (2d) 632, 633, where we said:

"* * * on an appeal from the refusal of the Court to direct a verdict of not guilty, or grant a motion for a new trial in a criminal case, the evidence and the inferences which may reasonably be drawn therefrom, must be viewed in the light most favorable to the State. It is unnecessary to cite authority for this postulate." See also *State v. Littlejohn,* 228 S. C. 324, 89 S. E. (2d) 924, and *State v. Epes,* 209 S. C. 246, 39 S. E. (2d) 769.

It is the contention of the appellants that the entire testimony of the State is based on circumstantial evidence and did not meet the test required by law since even if the jury believed each circumstance offered, the same did not point to the guilt of the appellants nor was such consistent with their guilt and inconsistent with their innocence. In *State v. Littlejohn, supra,* the rule as to circumstantial evidence is thus stated:

"* * * It must be remembered, too, that there is one test by which circumstantial evidence is to be measured by the

jury in its deliberations, and quite another by which it is to be measured by the trial judge in his consideration of the accused's motion for a directed verdict. As to the former, it is necessary that every circumstance relied upon by the state be proven beyond a reasonable doubt; and that all of the circumstances so proven be consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis. It is not sufficient that they create a probability, though a strong one; and if, assuming them to be true, they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed. *State v. Kimbrell*, 191 S. C. 238, 4 S. E. (2d) 121. So the trial judge charged, in substance, in the instant case, concluding with the following: 'In other words, in the consideration of circumstantial evidence, the jury must seek some explanation thereof other than the guilt of the accused, and, if such reasonable explanation can be found, the jury cannot convict on such evidence.' Such test goes to the weight of the evidence, and is therefore to be applied by the jury in their consideration of it. *State v. Roddey*, 126 S. C. 499, 120 S. E. 359. But on a motion for direction of verdict, the trial judge is concerned with the existence or non-existence of evidence, not with its weight; and, although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Brown*, 205 S. C. 514, 32 S. E. (2d) 825." [228 S. C. 324, 89 S. E. (2d) 926.]

It is contended that the trial Judge erred in refusing a motion by the appellants for a directed verdict made when the State rested its testimony and again at the conclusion of all the testimony. It is likewise contended that there was error in failing to direct a verdict of acquittal *non obstante veredicto*. Therefore, it becomes necessary to review the testimony to determine this issue.

It appears that Gentry Puckett was formerly a police officer at North Augusta, South Carolina, and his services as an officer had been terminated. John W. Burgess of Mooresboro, North Carolina, had been unemployed for more than two years. Don Wheeler was from Johnston City, Tennessee, and there is no testimony as to his occupation. Jimmy Lane was a service station employee in Forest City, North Carolina. Floyd E. Trantham was in the Air Force at Fort Bragg, Fayetteville, North Carolina. It appears from the record that the appellants and Jimmy Lane met in Henrietta, North Carolina, at the residence of the appellant, John W. Burgess. They traveled from there in the automobile of Gentry Puckett to Camden, South Carolina, where they were joined by Floyd E. Trantham. The record shows that Trantham left his car in Camden and the five rode together in Puckett's car. They traveled over highway 521 and turned on to highway 441 and drove into the yard in front of the Piggly Wiggly store owned by one Red Baker. It appears that all of the occupants of the Puckett car got out at the Piggly Wiggly store. The evidence shows that John W. Burgess, Don Wheeler and Jimmy Lane were left at the Piggly Wiggly store and Puckett and Trantham left in Puckett's car, ostensibly to set up a "poker game."

It appears by the testimony of H. F. Reeves, a highway patrolman, that he was patrolling highway 441 around 8 P. M. and that when he started to turn at the Piggly Wiggly store "my head lights hit a man that was running off. He ran in front of the market and around the side of it, and as I was passing by I saw another man standing there." This officer testified that he unsuccessfully tried to catch the man who was running away. He further testified that when he went back around the front of the store he found the appellant, Burgess, who told him that he was waiting for a North Augusta policeman, and that the policeman had gone to Trantham's place to "pick up two girls." This officer testified that in checking the premises he found a pair of gloves and a crow bar on a platform near the ice house ad-

jacent to the store. He also testified that he saw the appellant, Burgess, hiding a loaded 38 snub nosed pistol under the ice house. This officer testified that he examined the front door of the Piggly Wiggly store and found a fresh "skinned mark", indicating that the door of the store had been tampered with by some instrument. This officer also identified Jimmy Lee as being the other man that he saw running in front of the Piggly Wiggly store. The proprietor of the Piggly Wiggly store testified that when he closed the store at approximately 6 o'clock, the skinned place testified to by the highway patrolman, was not on the door. This same witness testified that when he later examined the door that it had been tampered with and that the outer edge had been shelled off, and there were scratches on the lock.

H. E. Barber testified that he was chief of the fire department of North Augusta, South Carolina, and that Gentry Puckett was a member of the police department a week prior to April 29, 1959, and that the police department and the fire department are located in the same building. This witness was shown the crow bar that had been found at the Piggly Wiggly store and he described it as "a halicon tool" and that such was used as "a forcible entry tool". He further testified that his department formerly owned three of such tools and that one was missing. There was offered in evidence such a tool as was brought by this witness and it was identical with the one found at the Piggly Wiggly store.

Floyd E. Trantham, a defendant in the case, but who was not on trial, testified in behalf of the State. He said that the weekend before the incident at the Piggly Wiggly store that his car had quit running and was being worked on with a bar and that Gentry Puckett made a remark that he got two good bars off of a fire truck at North Augusta. However, this witness denied that the bar that was used in working on his car was either of those in evidence. This witness testified that the purpose of the trip was to set up a poker game for the next day because it was pay day at the air base. He testified that the appellants, Burgess and Wheeler, along

with Lane, were left at the Piggly Wiggly store and that he left with the appellant, Puckett. He says that with Puckett he returned in about fifteen minutes and upon seeing a highway patrol car in front of the Piggly Wiggly store, they did not stop but went on down the road and picked up Lane and Wheeler. He also testified that they were supposed to pick up Lane, Wheeler and Burgess at the Piggly Wiggly store. He further testified that he, with Puckett, Lane and Wheeler went back to Camden and there Trantham turned his car, which he had parked previously in Camden, over to Wheeler and Lane. Trantham and Puckett returned to Shaw field. The two drove by the Piggly Wiggly store several times and finally pulled into a side road about two miles from the store. It was there that Lt. Dollard of the South Carolina Law Enforcement Division, along with Agent Fender, apprehended Puckett and Trantham. Dollard testified that he had seen this car pass the Piggly Wiggly store while an investigation was in progress. A search of the car owned by Puckett was made and there was found a 38 snub nosed pistol, a carbine rifle, with ammunition consisting of several clips and a belt with several clips, a sledge hammer, a large file, two feelers, described as tools used to trip tumblers of a safe, safe peeler, glass cutter, a punch, a flash light, and aluminum knucks. The testimony of the law enforcement officers was that the tools found in the car of Puckett were adapted to use in various activities connected with house breaking and safe cracking. In fact, the appellant Puckett admitted that certain of the tools found in his car could be so used. He also testified that he had no place at home to lock up these various tools and was carrying them around in his car. All of the appellants, and Lane and Trantham, specifically denied the formation of any conspiracy to break and enter the Piggly Wiggly store or of attempting to enter such with intent to steal the goods therefrom. They each denied any knowledge of the gloves, crow bar and pistol found at the Piggly Wiggly store. Puckett admitted the possession of the tools found in his car but denied that he had them

for the purpose of committing burglary, larceny, safe cracking or other crime. All others denied any knowledge of the possession of the tools by Puckett.

As is heretofore pointed out, a pair of gloves was found at the Piggly Wiggly store. After Trantham was released from jail and his Cadillac automobile was returned to him at the jail, he testified that he found a piece of paper in his car. It was identified as a tag from a pair of gloves and written on such tag was "A glove for every job." Trantham denied that he put this tag in his car and testified that it was not in his car when he last had possession thereof. We point out in this connection that Lane and Wheeler had been given possession of Trantham's car in Camden, after a pair of gloves had been found at the Piggly Wiggly store. Puckett testified that when he came back to the Piggly Wiggly store, in company with Trantham, and saw the car of the highway patrolman there, that he passed on by the store and down the road picked up Lane, and that Wheeler "whistled" and ran over to the car, and the four of them "took off to Camden."

We think it unnecessary to recite any further testimony in detail. The evidence in behalf of the appellants contradicts in many particulars that offered by the State. There is also a conflict in the evidence given by the appellants. The intent with which an act is done denotes a state of mind, and it can be proved only from expression or conduct, or both, given in the light of the circumstances. It was for the jury in this case to determine from the circumstances, acts and declarations of the appellants whether or not they had entered into a combination or a conspiracy to break and enter the Piggly Wiggly store referred to in the testimony, with the intent to steal therefrom. It was likewise a question for the jury to determine whether the appellants possessed certain tools or implements commonly used for the commission of burglary, larceny, safe cracking or other crime. The question of whether such tools were possessed with the intent to use or employ them in the commission of a crime was for de-

termination by the jury, which, by their verdict, they have found against the appellants. There was a reasonable conclusion to be drawn from the evidence that the appellants had an intent to use the tools and implements found in the car of the appellant, Puckett, in the commission of a crime. Many of the tools so found could be put to a lawful use but it is not reasonable to suppose that a person without criminal intent would be driving about with such an assorted and complete collection of tools and implements commonly used in burglary, larceny and safe cracking.

In view of the evidence, we think that the learned trial Judge properly refused to direct a verdict of not guilty or an acquittal *non obstante veredicto.*

When H. F. Reeves, the highway patrolman, was on the stand he identified a crow bar, otherwise described as a halicon tool, that he found lying on the platform at the ice house near the Piggly Wiggly store. This instrument was offered in evidence as an exhibit by the State and no objection to such admission was made by the appellants. Thereafter, H. E. Barber, chief of the fire department of North Augusta, South Carolina, was sworn as a witness for the State and there was exhibited to him the crow bar or halicon tool that was already in evidence. He testified that his fire department used such an instrument as a forcible entry tool. He further testified that his fire department was previously equipped with three such instruments but that they now have only two, one having disappeared. He testified that he did not know what became of the crow bar or halicon tool that was missing. He also testified that Gentry Puckett worked as a policeman in North Augusta and his police department was in the same building with the fire department.

This witness brought along a crow bar or halicon tool from the fire department of North Augusta. It was identified by the witness and was identical with the one previously offered in evidence. When the State offered in evidence the crow bar or halicon tool brought from North Augusta by the witness Barber, counsel for the appellants objected and

such objection was overruled by the trial Judge. The appellants assert that it was error to admit as evidence the crow bar or halicon tool identified by and brought from North Augusta by the witness Barber.

After the aforesaid crow bar or halicon tool had been offered in evidence, counsel for the appellants cross examined the witness thereabout without reserving the objection thereto previously made. We need not consider whether the evidence given by the witness Barber, or the exhibit offered in evidence, should have been excluded because appellants' counsel cross examined this witness concerning his testimony and the exhibit without reservation of their objection. The objection was thereby lost and if any error had been committed in the admission of the testimony or the exhibit, it was cured. *State v. Cavers,* 236 S. C. 305, 114 S. E. (2d) 401. However, apart from what we have heretofore said on this question, we conclude that the testimony of the witness Barber and the exhibit offered through his testimony was relevant to the issues in this case. This objection is overruled.

All exceptions of the appellants are overruled and the judgment of the lower Court is affirmed.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.